IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA and    ERIK J. EBERZ, Revenue Officer, Internal Revenue Service, | Civil Action 1:12-cv-1908 |
| Plaintiffs, | Judge John E. Jones III |
| -vs- | |
| TIMOTHY J. WASHBURN, | |
| Defendant. | |



MEMORANDUM IN SUPPORT OF DEFENDANT'S
OBJECTIONS AND MOTION TO SET ASIDE ORDER OF MARCH 19, 2013

## Background

The Internal Revenue Service served Timothy J. Washburn with a March 30,

2012 administrative Summons[1] to appear before Revenue Officer Erik J. Eberz for

the purpose of answering questions related to collecting an alleged federal income

tax liability for the tax year 2001.[2] The IRS brought action to enforce the

---

[1] Doc. 2-1.

[2] Civ. No. 12-cv-1908 is the "collection case" in which the Summons requires
testimony and the production of records possessed regarding "assets, liabilities, or
accounts held in the taxpayer's name or for the taxpayer's benefit ..." including

Summons, and this Court ordered Washburn to meet with an IRS officer before February 19, 2013.[3] Washburn told this Court that he believed he had no relevant records, and this Court informed Washburn that if he were to invoke his Fifth Amendment right, he would have to do so within the context of the Summons hearing.[4]

Washburn met with Eberz on February 15, 2013, and fully complied with the collection Summons, answering every relevant question asked by Eberz with respect to the Form 433-A, Collection Information Statement.[5] Eberz did not ask for any records,[6] and at the conclusion of the meeting, Eberz informed Washburn that he had complied with the Summons and gave him a copy of the Form 433-A Eberz had filled out at the meeting.[7]

---

bank records for the period 4/1/2011 through 3/29/2012, in order to collect the tax alleged to be due for the year 2001.

[3] Doc. 14.

[4] Doc. 22, Ex. 1, Washburn Decl., ¶¶ 7-8.

[5] *Ibid.*, ¶ 15.

[6] Doc. 22, Ex. 1, Washburn Decl., ¶ 23; Doc. 22, Ex. 2, Kerr Decl., ¶ 11.

[7] Doc. 22, Ex. 1, Washburn Decl., ¶ 29-30; Doc. 22, Ex. 2, Kerr Decl., ¶ 14.

The government moved on February 28, 2013 for this Court to find Washburn in contempt of this Court's order to comply with the IRS Summons,[8] claiming that Washburn had asserted his Fifth Amendment right to "most" questions. With its motion, the government submitted an unauthenticated document falsifying Defendant's answers.[9] This Court ordered Washburn to attend a hearing on March 19, 2012 to show cause why he should not be held in contempt,[10] and ordered him to meet with Eberz during the Court's recess on that date.[11]

Eberz asked Washburn questions as they appear on the Form 433-A. In the course of the questioning, Eberz asked Washburn if he ever gave his wife money to put into an account, and Washburn replied that he sometimes gave her money to pay the bills.[12] Eberz then asked if Washburn would request a copy of his wife's bank statements, and Washburn agreed.[13] Government's attorney, D. Brian Simpson, joined them before the Court reconvened, and indicated to Washburn that

---

[8] Docs. 15-16.

[9] Doc. 15-2; Doc. 22, Ex. 1, Washburn Decl., ¶¶ 31, 33-34.

[10] Doc. 17.

[11] Ex. 1, Washburn Decl., ¶ 4.

[12] Ex. 1, Washburn Decl., ¶ 5; Ex. 2, Kerr Decl., ¶¶ 4-9.

[13] Ex. 1, Washburn Decl., ¶¶ 6-7, 23-26; Ex. 2, Kerr Decl. ¶ 10.

he would prefer the statements be requested in ten or eleven days, and suggested he should try to download them. Simpson also told Eberz that once the IRS had Washburn's wife's credit union statements, the instant case could be closed. Neither Eberz or Simpson asked Washburn to make notations on his wife's bank statements, in the event he was able to obtain them.[14]

Once the Court reconvened, Simpson told the Court that Washburn was to "get his wife's bank statements." After repeated questioning by this Court, Eberz added that Washburn should mark on the statements "what was his and what was hers." [15] After the Court adjourned, the judge's clerk and Simpson conducted an *ex parte* meeting to set the terms of the agreement Washburn would be compelled to abide by.[16] When Washburn received the written order of the Court, he became aware that it contained language and terms he had never agreed to, specifically, that he would obtain his wife's bank statements — rather than request them from the credit union — and that he would indicate on the statements what deposits were his wife's income or his own, or he would be arrested and jailed.[17] Washburn now objects to the *ex parte* agreement between opposing counsel and judge's clerk,

---

[14] Ex. 1, Washburn Decl., ¶¶ 7-10; Ex. 2, Kerr. Decl. ¶¶ 10-12.

[15] Ex. 1, Washburn Decl., ¶¶ 11-12.

[16] *Ibid.*, ¶¶ 14-15.

[17] *Ibid.*, ¶¶ 16-17.

in which agreement he had no participation. Washburn also objects to this Court's

misrepresentation of the actual agreement he made with Eberz and government's

counsel, and further objects to the terms of the Court's order, and moves this Court

to set aside the order for good cause, as shown below.

## Argument

### Jurisdiction invoked by government extends only to summons enforced

Jurisdiction originates directly from the law, and the statutes invoked by the

government establish the limit to subject matter jurisdiction for the purposes of

enforcement of summonses. Federal Rule of Civil Procedure 12(h)(3) provides that

if the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action.

The United States brought action to judicially enforce the instant summons

under 26 U.S.C. § 7604(a):

> If any person is summoned under the internal revenue laws to appear,
> to testify, or to produce books, papers, records, or other data, the
> United States district court for the district in which such person
> resides or is found shall have jurisdiction by appropriate process to
> compel *such* attendance, testimony, or production of books, papers,
> records, or other data. (emphasis added)

The jurisdiction of the District Court invoked by the government is confined

to the requirements of the summons itself; jurisdiction to compel applies to "*such*

… testimony, or production of books, papers, records, or other data" that the person was summoned to provide. Section 7604(b) grants further power to make orders consistent with the law for the punishment of contempts "to enforce obedience to *the requirements of the summons* and to punish such person for his default or disobedience." (emphasis added) The plain meaning of the statutory language does not admit an enforcement power over demands made beyond the administrative summons itself.

The summons at issue *requires only* that Defendant provide "all documents and records you possess or control regarding … accounts held in the taxpayer's name or for the taxpayer's benefit which the taxpayer wholly or partially owns, or in which the taxpayer has a security interest. These records and documents include but are not limited to bank statements …for the period … 04/01/2011 to 03/29/2012."[18] Bank statements possessed and controlled by Defendant's wife's credit union, regarding accounts which are *not* held in the name of taxpayer Timothy J. Washburn, and which are *not* partially nor wholly owned by him, and in which he holds *no* security interest, are manifestly outside of the scope of the administrative summons' requirements as already enforced by this Court. Likewise, the terms of the summons do not require any bank statements from any account during the time period May 2012 through March 19, 2013.

---

[18] Doc. 2-1.

Although district courts have at times been held to have some discretion to modify a summons to cure it of overbreadth, a district court does not have power to modify the summons in order to expand its scope. If the IRS needs records for additional time periods outside of the original scope of the summons, it may issue another summons for such period to Washburn and make the proper showing under *United States v. Powell*, 379 U.S. 48 (1964). See *United States v. Hankins*, 581 F.2d 431 (5th Cir. 1978), *cert. denied*, 440 U.S. 909 (1979), see also *U.S. v. Clark*, 847 F.2d 1467 (10th Cir. 1988), *United States v. Ernst & Whinney*, 584 F.Supp. 1073 (N.D.Ohio 1984) (Service would have to seek issuance of another summons and satisfy statutory requirements to extend its investigation to the additional year sought). Likewise, if the IRS needs records under the control of persons other than Washburn, it may issue other summonses to such persons as needed and make the proper showing under *United States v. Powell, supra.*

Therefore, the March 19, 2013 Order of this Court, in that it orders Defendant to provide documents he does *not* possess or control regarding accounts not in his name, for time periods not mentioned in the summons, and in which he has no manifest ownership nor security interest, lies squarely outside the requirements of the summons, and thus outside the proper jurisdiction of this Court. As such, it should be set aside.

**Civil contempt inappropriate when compliance is factually impossible.**

The purpose of civil contempt is strictly remedial. It is designed to coerce compliance with lawful orders, rather than to vindicate the court's authority. *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904 (3d Cir. 1975), *cert. denied*, 423 U.S. 863 (1975). In the instant case, compliance is impossible, and cannot be coerced; if Washburn is jailed, he will be unable to purge himself of civil contempt by producing the records ordered by the Court, since the records sought are those pertaining to another person, and are furthermore in the keeping and possession of a third party (the credit union) over whom he exercises no control.[19]

15 U.S.C. § 6801 *et seq.* generally prohibits financial institutions from making nonpublic personal information of their customers available to nonaffiliated third parties such as Washburn in the absence of permission from the customer who holds the account, and it is Washburn's personal experience that the credit union, citing privacy reasons, refuses to turn over his wife's records to him.[20]

Even if Washburn were somehow, *in arguendo*, to obtain banking statements pertaining to his wife's credit union account, he is unaware of the contents and transactions of his wife's account, and would be wholly unable from his own knowledge to annotate such statements indicating the nature of the monies

---

[19] Ex. 1, Washburn Decl., ¶¶ 18-20, 29; Ex. 2, Kerr Decl., ¶¶ 8, 10.

[20] Ex. 1, Washburn Decl., ¶ 29.

deposited therein.[21] In discussing the nature of civil contempt, the Supreme Court has said that the court should "not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983). It is well-settled that "one charged with contempt of court for failure to comply with a court order makes a complete defense by proving that he is unable to comply. A court will not imprison a witness for failure to produce documents which he does not have unless he is responsible for their unavailability, cf. *Jurney v. MacCracken* [294 U. S. 125 (1935)], or is impeding justice by not explaining what happened to them, *United States v. Goldstein*, 2 Cir., 1939, 105 F.2d 150." *United States v. Bryan*, 339 U. S. 323, at 330 (1950). It is unmistakable that Washburn is not responsible for the credit union account of his wife nor her bank statements, and cannot be held in contempt for failing to supply any information concerning them. The March 19, 2013 Order of this Court, in that it threatens contempt and imprisonment for Defendant's failure to do the impossible, should be set aside.

**Creation of documents cannot be compelled via summons proceedings**

Defendant is ordered not only to obtain third-party documents outside the scope of the summons enforced by this Court, he is ordered to make notations upon

---

[21] Ex. 1, Washburn Decl., ¶¶ 20-22.

such documents to "indicate whether each entry of deposit on the accounts are his

... income or income of his wife."[22] Such annotations constitute the creation of

new documents that do not currently exist, and are therefore outside of the scope of

the IRS summons power, as affirmed by the Internal Revenue Manual's guidance

that "A summons cannot require a witness to prepare or create documents,

including tax returns, that do not currently exist."[23]

The Secretary or his delegate is authorized under 26 U.S.C. § 7602(a) "(t)o

*examine* any books, papers, records, or other data which may be relevant or

material" to his inquiry. (emphasis added) In subsection (2), the Secretary or his

delegate is authorized to summon any person deemed to have relevant information

to appear before the Secretary "*to produce* such books, papers, records, or other

data." (emphasis added) The first subsection authorizes the Secretary to examine

specified documents, but does not authorize him to order the making of any items

not in existence. If Congress intended to give the Secretary authority to direct the

manufacture of new documents, it would have used appropriate language. Since it

is "fundamental that a section of a statute should not be read in isolation from the

context of the whole (statute)," *Richards v. United States*, 369 U.S. 1 (1962), the

"books, papers, records, or other data" to be produced in subsection (2) are those

---

[22] Doc. 20, p. 2.

[23] Internal Revenue Manual 5.17.6.1., ¶ 3.

which may be examined in subsection (1). See *United States v. Brown*, 536 F.2d

117 (6th Cir. 1976).[24] See also *United States v. Mobil Corp.*, 499 F.Supp. 479 (N.D.

Ca. 1980) ("neither ... regulations nor their statutory underpinning authorize the

IRS or the courts to require the generation of previously nonexistent records");

*United States v. O'Shea*, 662 F.Supp.2d 535 (S.D.W.Va. 2009) (summons requests

not enforceable to the extent they request generation of new documents).

## Government attempts to obtain documents illegally

12 U.S.C. § 3402 prohibits access to financial records by government

authorities unless the banking customer has authorized such disclosure (§ 3404), or

unless an administrative summons has been served on the financial institution and

the customer (§ 3405), or unless a judicial subpoena has been issued upon the

financial institution and the customer (§ 3407). This statute accords with the

requirement in 26 U.S.C. § 7609(a) that notice of summonses to "third-party

recordkeepers" such as "any bank ... or credit union" (§ 7603) "shall be given to

any person [other than the summoned party] who is identified in the summons

within 3 days of the day on which such service is made ... Such notice shall be

---

[24] While *United States v. Brown* discussed the limitations of the Secretary's power
with respect to the creation of documents and declined enforcement of a summons
issued to obtain handwriting exemplars on this ground, the Supreme Court, in
*United States v. Euge*, 444 U.S. 707 (1980), held that handwriting exemplars were
allowed on a different ground, as a kind of traditional, "nontestimonial, physical
evidence" included in the requirement to appear and give testimony.

accompanied by a copy of the summons ... and shall contain an explanation of the right [under § 7609(b)(2)] to bring a proceeding to quash the summons." This requirement affords the bank customer the opportunity to challenge an IRS summons enforcement on any grounds, see *Reisman v. Caplin*, 375 U.S. 440 (1964), but in particular, to test via a summons enforcement proceeding whether the IRS has met the standard for enforcement by a district court, as set forth in *United States v. Powell*, 379 U.S. 48 (1964).

In seeking this Court's instant order, the government proceeded illegally, in defiance of congressionally mandated due process for obtaining bank statements. Government's attorney (and Officer Eberz) must be presumed to know the legal requirements involved, yet they have enticed this Court, in the context of a contempt hearing, to enlarge the scope of the summons previously enforced (and fully complied with at the time they made new demands[25]) to include the production of documents pertaining to his wife, a bank customer, which are under the control of a credit union, a third-party recordkeeper. This is in spite of the fact that, with respect to these third-party records, the government would at present be unable to satisfy the *Powell* standard, *supra*, for summons enforcement: it has shown no legitimate purpose for requesting Mrs. Washburn's bank statements and it has not taken any of the administrative steps required by the Internal Revenue

---

[25] Ex. 1, Washburn Decl., ¶ 9.

Code which would afford Defendant or his wife their due-process rights. The government has further made no claim, showing, issued no summons, nor applied for enforcement with respect to Mrs. Washburn's bank statements for the time period addressed by the Court's Order.

In addition, the Order of March 19, 2013 is invalid in that it is based upon the government's fraudulent misrepresentation to the Court — mostly made *ex parte* to the judge's clerk after the Court adjourned — that Washburn agreed with Eberz to obtain his wife's credit union statements, which he neither possesses nor controls, and to make markings on them indicating what was his, and what was her, income.[26] Contrary to the United States attorney's misleading representation, Eberz — presumably familiar with the Internal Revenue Manual's guidance on the "legal concepts governing the use and enforcement of administrative summonses,"[27] including the prohibition on using a summons to compel the generation of new documents, *supra* — did *not* seek Washburn's agreement to create marked-up copies of another's bank statements during his interview with him on March 19, 2013. The only agreement Washburn made directly with Eberz, memorialized in Eberz' own notes, was that he would be willing to *request* the

---

[26] Ex. 1, Washburn Decl., ¶¶ 7-15.

[27] Internal Revenue Manual 5.17.6.1, ¶ 1.

bank statements from the credit union.[28] Washburn is aware that he would be unable from his personal knowledge to make any testimony from his personal knowledge about such statements, and it is hardly credible that he would have agreed to do so. Since the Court order is based on a species of fraud upon this Court, the Court should set it aside.

Even if, *in arguendo*, Defendant Washburn were deemed to have made the agreement claimed by government's attorney, such voluntary agreement would still be outside of this Court's subject-matter jurisdiction with respect to the summons.

## Defendant has a right to counsel at a contempt proceeding

Washburn is proceeding *pro se*, and has informed this Court at the last hearing that he is unable at present to afford counsel. His request that counsel be appointed has been denied.[29] A person in criminal or civil contempt may not be sentenced to a term of imprisonment unless he was afforded the right to counsel at the contempt proceeding. See *Argersinger v. Hamlin*, 407 U.S. 25 (1972); *In re Rosahn*, 671 F.2d 690, 697 (2nd Cir. 1982); *In re Di Bella*, 518 F.2d 955 (2nd Cir. 1975); *In re Kilgo*, 484 F.2d 1215 (4th Cir. 1973); *Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir. 1973).

---

[28] Ex. 1, Washburn Decl, ¶¶ 7-9, 22-28, Attachment to Exhibit 1.

[29] *Ibid.*, ¶¶ 2-3.

Since Washburn has not been afforded his right to counsel, a contempt proceeding is inappropriate in this matter.

## Conclusion

WHEREFORE, for the reasons set forth hereinabove, Defendant prays this Court set aside the March 19, 2013 order, deny Plaintiffs' motions with respect to finding Defendant in contempt, find rather the Defendant in full compliance with the administrative summons and this Court's enforcement order of January 18, 2013, mark this case closed, and grant such other relief as this court deems just and proper.

Respectfully submitted this 5th day of April, 2013,


Timothy J. Washburn, *pro se*
6458 Pamadeva Road
Hanover, PA 17331
717-637-7809